BENJAMIN COOPER, MIRIAM COOPER & ALBERT H. HOHMANN, TRADING AS WARREN SCREW MACHINE PRODUCTS CO., PLAINTIFFS, v. BUSINESS INVESTMENT CO., INC., A CORPORATION OF NEW JERSEY, AND HARRY KOTLER, DEFENDANTS.

Superior Court of New Jersey
Law Division

Decided October 15, 1951.

*Mr. David M. Klausner,* for the plaintiffs.

*Mr. Edward R. McGlynn (Messrs. Hodes & Hodes,* attorneys), for the defendants.

COLIE, J. S. C.   The plaintiffs, formerly partners trading as Warren Screw Machine Products Co., instituted suit against the defendants on a complaint in six counts as follows:

1. Conversion of machinery and a demand for compensatory damages.

2. Conversion of machinery and a demand for punitive damages.

3. Trespass and a demand for punitive damages.

4. Conversion of certain miscellaneous property and a demand for compensatory damages.

5. Conversion of the same property and a demand for punitive damages.

6. Trespass and a demand for compensatory and punitive damages for the loss of profits on the sale of certain machinery.

The defendants counterclaimed, seeking to recover the cost of removing machinery left by the plaintiffs on the property and the storage charges therefor.

The plaintiffs were in possession of premises at 291 Cleveland Street, Orange, under a lease dated August 6, 1945. The lease was for two years with a three-year renewal option. On May 24, 1946, the defendant, Business Investment Co., Inc., entered into a preliminary agreement with the owner of the property, Esther Rudy, for the purchase of the property, and a contract between Esther Rudy and the defendant company was signed. On the same date, Esther Rudy and the defendant company entered into a lease under which Esther Rudy leased the premises at 291 Cleveland Street, Orange, to the investment company for a term beginning June 3, 1946, and ending November 15, 1946, at a rental of $1,500 per month. The lease contained the following provisions:

"It is understood that the landlord is to deliver to the tenant possession of approximately but not less than 5,000 square feet of the said finished building upon the above premises to be set forth on the sketch annexed herein on June 3rd, 1946, and possession of the entire above described premises on July 3rd, 1946.

It is understood that the lease of the entire premises hereinabove mentioned, is modified by this paragraph and that the rental as a result thereof for the month beginning June 3rd, 1946, and ending July 3rd, 1946, is likewise modified to the extent that the tenant shall pay rent for the said month which shall be proportionate to the amount of space occupied by the tenant during the said month as compared to the amount of the entire space of the said finished building.

The parties hereto have entered into a contract for the sale and purchase of the above described premises. In the event the title shall close and the purchase price shall be paid pursuant to the terms of said contract, then at the closing of the said title, the purchaser shall be entitled to a credit for the difference between the amount of rent paid hereunder and the amount which shall consist of the insurance, taxes, interest at 4½% per annum on the unpaid balance of the purchase price during the said period beginning June 3rd, 1946, and ending on the date of the closing of the title.

In the event title does not close on November 15th, 1946, then it shall be agreed that this lease shall extend until such time title shall close under the same terms and conditions as hereinabove set forth, provided the closing of the title and the payment of the purchase price is not delayed by reason of the default of the purchaser."

The plaintiff, Benjamin Cooper, who acted for the owner of the property, Esther Rudy, and who held her power of attorney, testified that on June 3, 1946, he and the defendant, Kotler, agreed that the investment company should receive 6,850 square feet instead of the 5,000 under the lease which the investment company had with Esther Rudy, and he further testified that the remainder, consisting of approximately 5,500 square feet, was to remain in the possession of the plaintiffs for a reasonable time after July 3, 1946, so as to enable them to sell and remove the machinery on the property. There also was testimony that on June 24, 1946, the investment company was given possession of an additional 900 feet. The defendants' version as to the amount of space that they received is in direct conflict. They allege that they received approximately 5,900 square feet in June and approximately 1,275 feet in July.

On this phase of the case, the statement upon which title was closed when the investment company purchased the property reveals that the investment company occupied 6,850 square feet from June 3 to June 24 and a total of 7,750 square feet from June 24 to July 31, and in view of this corroborative evidence, the court finds as a fact that the space occupied by the investment company during the period in dispute was as indicated by that closing statement. The closing took place on November 27, 1946.

There is no question but that the investment company endeavored repeatedly to obtain possession of the entire building and that the plaintiffs were endeavoring to postpone removal of the machinery, their stated purpose being to enable them to find a purchaser. However that may be, on July 30, 1946, the investment company sent a telegram to the owner and to the tenants (the plaintiffs in possession) demanding that the machinery be removed on the following day or that in the alternative the defendants would remove the machinery and store it at the plaintiffs' expense, and that is exactly what took place. It is this admitted removal of

the machinery which forms the basis for the first, second, third and sixth counts in the complaint.

As to the value of this machinery, the testimony is in sharp conflict. Benjamin Cooper testified that the value of the machines removed by the defendants on July 31 or August 1 was $21,125, and these values they attempted to substantiate by the testimony of one Ralph Saltman, a consulting production engineer. However, the court has discarded the testimony of this witness for the reason that he had no personal knowledge of sales prices and based his knowledge on a single deal in 1942 involving the same kind of machinery. Mr. Saul Ehrenberg, produced by the plaintiff, testified to a fair market value of between $16,000 and $20,000. As against this, the defendant produced one Harry E. Asher who had had 30 years' experience in buying and selling new and second-hand machinery of this type and in appraisal work. His testimony is that the machinery in question ranged in age from as little as 18 years of age to as much as 45 years of age, and his estimate of the value of the machinery that was put in storage amounted to approximately $2,725.

In connection with the affairs of the plaintiff company, an action was instituted in the Court of Chancery and it is, in the opinion of this court, of considerable significance and going to the credibility of Mr. Cooper that he executed in the Chancery proceeding an affidavit in which he said that the partnership owned machinery of a value "considerably less than $20,000." It also appears that the machinery was carried on the books at a value of $12,277.18, as shown by the record in the Chancery action, and that as of May, 1946, the book value of the machinery was set up as $13,408.50. The plaintiffs explained the difference by alleging that the figures in the Chancery action and on the books of the partnership represented book value, whereas the figures testified to by Mr. Cooper and by Mr. Ehrenberg represented the fair market value. Actually, the partnership realized from the sale of machinery after July 2, 1946, approximately $13,500. In light of the doubt cast on the figures as to value from

the witnesses Cooper and Ehrenberg, the court is thrown back upon the testimony of Mr. Asher and finds as a fact that the machinery which was placed in storage had a market value as of the date of his examination of $2,725.

The court further finds that the correspondence exchanged between the plaintiffs' attorney and the defendants' attorney under date of August 13, 1946, and August 14, 1946, constituted a demand and refusal. The significant portion is contained in the letter of the defendants' attorney dated August 14 and reads: "You can have everything that was removed upon arranging to pay for the moving and storage and such other related charges that have been incurred in the moving and storing." In the view that the court takes of the matter, this in essence amounts to a refusal of what, in light of the controversy between the parties, was a demand, although the letter of August 13 was couched in the terms of a request for information.

A review of the testimony and the exhibits results in a finding by the court that there was a conversion of the machinery which is the subject matter of Counts 1 and 2; that there was no proof of a conversion of the property which is the subject of Counts 4 and 5; that there is no proof of loss of profits on the prospective sale of the machinery converted. The court also finds that the removal of the property by the defendants was malicious in the sense that it was a wrongful act intentionally done without just cause or excuse, and awards the plaintiffs the sum of $2,725 compensatory damages and $1,000 punitive damages against the defendant, Business Investment Co., Inc. Judgment is entered in favor of the defendant, Harry Kotler, and judgment is entered in favor of the plaintiffs on the counterclaim filed by the defendant, Business Investment Co., Inc.